# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LUCINDA O'DEA,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**TARGET CORPORATION**,<br><br>Defendant. | No. 1:24-cv-02763<br><br>The Honorable Andrea R. Wood |

## DEFENDANT TARGET BOOTS ALLIANCE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

I. **INTRODUCTION**

Plaintiff Lucinda O'Dea ("Plaintiff") brings this action against Defendant Target Corporation ("Target") for selling products based on the Food and Drug Administration ("FDA") monograph for topical over-the-counter ("OTC") benzoyl peroxide ("BPO") acne drugs ("Acne Monograph"). Plaintiff admits that the Target branded BPO acne treatment products ("BPO Products") "are not designed to contain benzene" (Compl. ¶ 2.) Plaintiff asserts, however, that under certain conditions the BPO in these BPO Products "degrades over time to directly form Benzene." (*Id.* ¶ 30.) Plaintiff asserts that she was damaged by Target's failure to warn consumers that the ingredients in the BPO Products might degrade to form benzene.

Plaintiff's Complaint is based entirely on a study and subsequent Citizen Petition to the FDA by Valisure, LLC ("Valisure") claiming that benzene was detected in a sample of BPO acne products subjected to extreme temperatures for extended periods of time. But the Valisure study provides no basis for Plaintiff's claims. As Valisure concedes in its March 5, 2024 Citizen Petition ("Citizen Petition"), Valisure did not test every BPO acne product. (*See* Citizen Petition attached hereto as Exhibit 1 at 11.)[1] The Valisure study, at best, indicates that some BPO acne drugs can degrade when exposed to high heat for weeks. But Plaintiff alleges no facts showing that her BPO Products contained benzene. Because Plaintiff's theory of deception relies on the assumption that her product was unsafe, Plaintiff has failed to allege any injury-in-fact or state a claim.

Further, all of Plaintiff's claims are based on the theory that the "label is misleading because it does not disclose" information not required by the Acne Monograph and, as a result, are preempted by 21 U.S.C. § 379r(a). *Robinson v. Walgreen Co.*, 20 C 50288, 2022 WL 204360, at

---

[1] The Court "may . . . take judicial notice of matters of public record." *Harris v. Topco Associates, LLC*, 538 F. Supp. 3d 826, 828 (N.D. Ill. 2021) (quoting *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1043–44 (7th Cir. 2019)).

*5 (N.D. Ill. Jan. 24, 2022) ("Plaintiffs' allegation that the . . . label is misleading because it does not disclose that it has the same formulation as [another product] is an attempt to impose a requirement on the labeling . . . that is 'not identical with' that imposed by the [Monograph]."). Here, Plaintiff complains the BPO Products were deceptively labeled because they *did not* deviate from the Acne Monograph. Because Plaintiff's claims seek to create a labelling requirement that is not identical to those under the Acne Monograph, her claims are preempted.

Alternatively, the FDA has primary jurisdiction to determine drugs' safety and the warnings they bear. Recognizing this fact, Valisure has already initiated the FDA's Citizen Petition process. (Compl. ¶ 35; *see also* 21 C.F.R. § 10.30.) Even if the Court does not find Plaintiff's claims preempted, it should dismiss or stay the action so the FDA may assess the Acne Monograph.

As further detailed below, Plaintiff's Complaint is defective for myriad reasons, which cannot be cured by amendment.

## II.     FACTUAL BACKGROUND

This case is not a typical deceptive advertising action about label claims that a defendant voluntarily made about its product. Plaintiff's claims are, fundamentally, about whether the entire class of BPO acne drugs generally recognized as safe and effective ("GRAS/E") by the FDA under the Acne Monograph are actually safe. (*See* Compl., ¶¶ 1-2, 6-7, 15, 52, 55-56, 78-80, 87, 124.)

The FDA regulates OTC benzoyl peroxide acne medications like the BPO Products via its drug monograph system, which evaluates their safety. *See* 21 C.F.R. § 333.301 *et al.*; *Delarosa v. Boiron*, Inc., 818 F. Supp. 2d 1177, 1181 (C.D. Cal. 2011). In drafting monographs, the FDA established OTC drug categories and assigned an advisory review panel ("Committee") of qualified experts tasked with evaluating the safety and effectiveness of OTC drugs, reviewing their labeling, and advising the FDA Commissioner on the promulgation of monographs under which

the OTC drugs listed within each monograph are GRAS/E and not misbranded. *Delarosa* at 1181; *Id.* §§ 330.5, § 330.10(a). The result is "a detailed regulation — a 'monograph' — for each therapeutic class of OTC drug products. Like a recipe, each monograph sets out the FDA-approved active ingredients . . . and provides the conditions under which each active ingredient is GRAS/E." *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 75 (2d Cir. 2013), *as amended* (Mar. 21, 2013). The FDA excludes from its monographs active ingredients it determines are either not GRAS/E or for which there is insufficient data to confirm whether they are GRAS/E. *Id.* Any "OTC drug that fails to conform to its applicable monograph after the date the final monograph became effective is liable to regulatory action." *Delarosa*, 818 F. Supp. 2d at 1182.

BPO was not an authorized active ingredient in the 1991 Acne Monograph because, at that time, the FDA was still studying BPO's potential for carcinogenicity. 21 C.F.R. § 333.310; Final Rule, 56 FR 41008. In 2010, the FDA issued a final rule that finding that BPO, "is GRAS/E for the OTC topical treatment of acne." (Classification of Benzoyl Peroxide as Safe and Effective and Revision of Labeling to Drug Facts Format; Final Rule, 75 FR 9767-01.) This conclusion was based on two long-term studies the FDA determined "adequately exclude the possibility that benzoyl peroxide is a carcinogen with a short or long latency period." *Id.* According to the FDA, "the negative findings in the carcinogenic and photocarcinogenic studies support a GRASE conclusion for benzoyl peroxide . . . ." *Id.* at 9771. The 2010 final rule authorizing BPO as an active ingredient under the Acne Monograph included new warnings and directions required specifically for products containing BPO. *Id.* at 9772; 21 C.F.R. § 333.350(c)(4), (d)(2).

Each of Plaintiff's claims are based on Valisure's conclusion—contrary to the Acne Monograph—that all "Benzoyl peroxide acene (*sic*) treatment products are unstable and form benzene." (Compl., ¶ 44.) Valisure's testing methodology involved subjecting limited samples of

BPO products to "above-ambient temperatures, specifically, 37°C (98.6°F), 50°C (122°F), and 70°C (158°F)" for weeks at a time. (Ex. 1 at 1.) Based on this testing, which did not detect benzene in all the BPO acne products tested, Valisure has called for a recall of **all** BPO acne products, based on the alleged risk they could produce benzene if stored at elevated temperatures. (*Id.*)

Plaintiff alleges no facts specific to the BPO Products she purchased. She alleges no testing of the specific BPO Products she bought, the conditions in which they were stored, or the normal shipping and handling of her BPO Products. Plaintiff fails to allege facts supporting an inference that her BPO Products were subjected to conditions like those identified in the Valisure testing. Nonetheless, Plaintiff alleges that Target failed to: (1) warn consumers that BPO Products may contain benzene, and (2) sufficiently test or recall the BPO Products.

In this case, Plaintiff does **not** allege the BPO Products failed to conform to the Acne Monograph. Rather, she complains that Target sold the BPO Products in conformance with the Acne Monograph, but should have deviated from the FDA issued Acne Monograph to craft some unspecified statement (which appears on no other BPO product) she contends would "warn" her about the risk of possible benzene contamination in products made without benzene.

### III.     LEGAL STANDARD

"To survive a motion to dismiss under 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[I]t is not enough for a complaint to avoid foreclosing possible bases for relief; it must actually suggest that the plaintiff has a right to relief . . . by providing allegations that 'raise

a right to relief above the speculative level.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555). "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

In addition, Plaintiff's fraud-based claims are subject to a heightened pleading standard under Rule 9(b). *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 739, 738 (7th Cir. 2019).

## IV. ARGUMENT

**A.  Plaintiff Fails to State Any Claim Because She Has Not Plausibly Alleged Her BPO Products Contained Benzene.**

Plaintiff alleges Target misled her with its "representations and omissions regarding the presence of benzene in the [BPO] Products." (Compl., ¶ 93.) But Plaintiff fails to allege that her BPO Products actually ***did*** contain benzene. Plaintiff admits that "[t]he BPO Products are not designed to contain benzene," but asserts that the BPO Products degrade to form benzene when stored at extreme temperatures. (*Id.* ¶¶ 1-3, 30, 32, 34, 47.)

Counts I and III of the Complaint are based on an alleged violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").[2] To state an ICFA claim, Plaintiff must allege with specificity under Rule 9(b) a deceptive act or practice by defendant. *Avery v. State Farm Mut. Auto. Ins.*, 835 N.E.2d 801, 850 (Ill. 2005). Plaintiff has failed to plausibly allege that any of the label claims on the BPO Products she purchased are deceptive or false. Here, Plaintiff fails to make product-specific allegations that the BPO Products she purchased contained benzene

---

[2] Count III of the Complaint alleges violations of consumer protection acts on behalf of a class of individuals living in 10 states. It is readily apparent that Plaintiff cannot personally state a claim for a violation of the consumer protection acts of states where she does not live and did not purchase the BPO Products. See *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 63, 879 N.E.2d 910, 921 (2007) (holding that "the relevant policy interest of Illinois would be to apply Illinois law to the claims of Illinois consumers").

at any time. She alleges nothing about testing which would show that the BPO Products in her possession ever contained benzene. Plaintiff does not specify the UPC, batch, or lot numbers for her BPO Products to confirm whether those correspond to any of the products tested by Valisure. Nor does she allege that she subjected her BPO Products to the temperatures described in the Citizen Petition. Even if she had, those allegations would still be insufficient to allege her BPO Product contained benzene, since she has also alleged facts showing that not all BPO acne products subjected to high temperatures degrade to benzene. (Compl., ¶¶ 47-48.)

And, since the wholly speculative presence of benzene underpins the alleged deception—that BPO Products are unsafe—in each of her claims, Plaintiff has failed to state *any* claim. *Zarinebaf v. Champion Petfoods USA Inc.*, 18 C 6951, 2022 WL 980832, at *7 (N.D. Ill. Mar. 31, 2022) ("This reasoning departs the land of evidence and enters the realm of conjecture."). Plaintiff in this case relies on almost identical reasoning as the plaintiffs in *Zarinebaf*, that her "purchases may have indeed been contaminated, but the issue went undetected at the time." *Id.* As a result, "even considering the facts in a light most favorable to the Plaintiff[], there is no evidence for a reasonable jury to infer that [she] purchased [BPO Products] containing [benzene]." *Id.*[3]

B.      **Plaintiff Lacks Standing to Assert Claims Individually or on Behalf of a Class.**

    1.      **Plaintiff Has Not Alleged an Injury-In-Fact and Lacks Article III Standing.**

Because Plaintiff states no facts to plausibly allege her BPO Product contained benzene and was actually unsafe, Plaintiff lacks an injury-in-fact and Article III standing. *See Casillas v.*

---

[3] *See, e.g.*, *Bowen v. Energizer Holdings, Inc.*, No. CV 21-4356, 2022 WL 18142508, at *4 (C.D. Cal. Aug. 29, 2022) ("Plaintiff's claim is based on the ***hypothetical*** possibility that the products she purchased ***may*** have contained benzene – not that she purchased a product that demonstrably did contain benzene . . . ." (emphasis in original)); *Rooney v. Procter & Gamble Co.*, No. CV 22-1164, 2022 WL 17092124, at *3 (E.D. La. Nov. 21, 2022) (dismissing action regarding benzene contamination because "the Valisure citizen's petition does not state that every single sample . . . tested contained benzene.").

*Madison Ave. Assocs., Inc.*, 926 F.3d 329 (7th Cir. 2019) ("An 'injury in fact' is 'an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.'") (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Valisure's Citizen Petition fails to establish the BPO Products are unsafe and Plaintiff makes no allegation that she was harmed by them. See *Cascio v. Johnson & Johnson*, No. 1:23-CV-3127-TWT, 2024 WL 693489, *2 (N.D. Ga. Feb. 20, 2024) (a "recall notice alone cannot support a plausible inference that the sunscreen [plaintiff] used contained benzene[,]" reasoning that "'[a] recall will often be overinclusive' and that 'the mere existence of a recall does not prove that any individual's [product] actually contained a nonconformity.'") (quoting *Burbank v. BMW of N. Am., LLC*, No. CV 21-01711-KM-ESK, 2022 WL 833608, at *9 (D.N.J. Mar. 21, 2022)).

Plaintiff cannot rely on the hypothetical, but unrealized *risk* of benzene exposure to state an injury. (Ex. 1, at 1 ("BPO products could produce substantial amounts of benzene when stored at above-ambient temperatures . . . .")); *cf. Bowen,* 2023 WL 1786731, *6 (dismissing claim that hypothetical exposure to benzene in sunscreen "*could* expose people to excessively high nanogram amounts of benzene" because it "creates only a speculative risk of harm") (emphasis in original). Under controlling Seventh Circuit precedent, dismissal is warranted where Plaintiff alleges nothing more than a "past potential risk of harm resulting in economic losses" which is entirely "hypothetical or conjectural." *In re Recalled Abbott Instant Formula Prod. Liab. Litig.*, 97 F.4th 525, 529 (7th Cir. 2024); *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 936 (7th Cir. 2021) (Plaintiff "failed to show that the dog food he purchased was at risk of containing pentobarbital.").

    **2.    Plaintiff Lacks Standing to Assert Claims Relating to Products She Did Not Purchase.**

Plaintiff lacks standing to represent a class of consumers who bought an undefined array of "acne treatment products under various brands that contain the active ingredient benzoyl

peroxide" she never purchased (and never defines). (Compl., ¶¶ 1, 101-103.) This district regularly finds that a "[p]laintiff has no injury-in-fact caused by products that she did not buy, so she lacks standing with respect to those products." *Sanchez v. Walmart, Inc.*, 2024 U.S. Dist. LEXIS 85896, *13 (N.D. Ill, May 13, 2024); *see also Bakopoulos v. Mars Petcare US*, 20 CV 6841, 2021 U.S. Dist. LEXIS 129177, at *6-7 (N.D. Ill. July 12, 2021) ("[P]laintiffs cannot bypass the 'irreducible constitutional minimum' of Article III standing for their individual claims.") (quoting *Lujan*, 504 U.S. at 560). Plaintiff cannot "possibly have been injured by representations made on a product [Plaintiff] did not buy," and therefore lacks standing to sue with respect to such products. *Pearson v. Target Corp.*, No. 11 CV 7972, 2012 U.S. Dist. LEXIS 187208, at *4 (N.D. Ill. Nov. 9, 2012). Plaintiff only alleges that she purchased Target's 2.5% BPO cream and 2.5% BPO location (Compl., ¶ 14.) The Court should dismiss all claims as to products Plaintiff did not purchase.

C. **Plaintiff's Attempt to Regulate BPO Drug Safety and Warnings Is Expressly Preempted and Alternatively FDA Has Primary Jurisdiction.**

The BPO Products are regulated by the Acne Monograph and therefore are subject to "requirement[s] under [the FDCA]" for purposes of 21 U.S.C. § 379r(a). *See* 21 C.F.R. § 333.310 (listing active ingredients). Section 379r(a) provides that states may not establish "any requirement . . . (1) that relates to the regulation of a [nonprescription drug]; and (2) that is different from or in addition, or that is otherwise not identical with, a requirement under [the FDCA]." 21 U.S.C. § 379r(a). Moreover, "any requirement relating to . . . a warning of any kind for a drug" shall be deemed a state "requirement" that satisfies § 379r(a)(1). *Id.* § 379r(c)(2).

"[T]o avoid preemption, a state law claim related to misleading labeling must allege a violation of the FDCA." *Wright v. Walmart, Inc.*, 22-CV-02311-SPM, 2023 WL 5348861, at *4 (S.D. Ill. Aug. 21, 2023) (citing *Turek v. Gen. Mills, Inc.*, 754 F.Supp. 2d 956, 958 (N.D. Ill. 2010)). Here, "granting a Rule 12(b)(6) motion to dismiss based on an affirmative defense such as

preemption is 'appropriate'" because "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Novotney v. Walgreen Co.*, 683 F. Supp. 3d 785, 788 (N.D. Ill. 2023) (quoting *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015)). Plaintiff admits that the BPO Products are not designed to contain benzene, but instead asserts that BPO degrades to form "unsafe levels of benzene" when stored at extreme temperatures. (*See, generally,* Compl.) Given this, Plaintiff argues that Target should be required to include a warning on the label related to benzene. (*Id.*)

Plaintiff's claims are expressly preempted because they demand divergence from the Acne Monograph. 21 U.S.C. § 379r(a); 21 U.S.C. § 352(ee); 21 C.F.R. §§ 333.350. Under § 379r(a), states may only "impose requirements that are identical to those imposed by the FDCA, but not different from or more burdensome than those requirements." *Robinson*, 2022 WL 204360, at *4 (quoting *Harris*, 538 F. Supp. 3d at 831). "[T]he whole point of section 379r is that it is not up to private litigants—or judges—to decide what is 'false or misleading.'" *Harris*, 538 F. Supp. 3d at 831 (quoting *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 376–77 (S.D.N.Y. 2014)).

Given this, the BPO Products—which "are not designed to contain benzene"—cannot legally list benzene in the BPO Products' ingredients list. Active and inactive ingredients in an OTC drug must be listed on its label in alphabetical order. 21 C.F.R. §§ 201.66(c)(8); 201.66(d)(6). Active and inactive ingredients are defined as "components" that are "intended for use in the manufacture of a drug product…" 21 C.F.R. § 314.13(b). Benzene is not an active or inactive ingredient and Plaintiff admits that the BPO Products do not contain benzene when manufactured, any labeling identifying benzene as an ingredient would be misleading and would impermissibly impose a requirement "that is …not identical with" the FDCA. See § 379r(a)(2).

This District has already considered whether an OTC drug can be required to include additional disclosures over and above what is required by the FDA monographs. *Robinson*, 2022 WL 204360, at *5; *Harris*, 538 F. Supp. 3d at 833. In both *Robinson* and *Harris*, plaintiffs argued "that the Infants' Product label is misleading because it does not disclose that it has the same formulation as the Children's Product." *Robinson*, 2022 WL 204360, at *5; *Harris*, 538 F. Supp. 3d at 829-30. The Court found that this was "an attempt to impose a requirement on the labeling . . . that is 'not identical with' that imposed by" the monograph and, as such, was preempted by 21 U.S.C. § 379r. *Robinson*, 2022 WL 204360, at *5; *Harris*, 538 F. Supp. 3d at 833. Because Plaintiff's claims seek to impose labeling requirements not identical to the monograph, each should be dismissed with prejudice. Her claims are preempted and no amendment can remedy this error.

And Plaintiff cannot avoid Congress's preemptive intent by arguing she seeks to impose "parallel" state law duties. See *Buckman v. Plaintiff's Legal Committee*, 531 U.S. 341, 349 n. 4. (2001). Indeed, the "requirements" identified in 21 U.S.C. § 379r "reach[] beyond positive enactments, such as statutes and regulations, to embrace common-law duties." *Wright*, 2023 WL 5348861, at *3. Put another way, "[a] common law rule that 'requires that manufacturers label or package their products in a particular way' qualifies as a requirement." *Id.* (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 443 (2005)).

Ultimately, it is FDA's job to enforce the FDCA and to evaluate whether the BPO Products are safe. See 21 U.S.C. § 337(a). By claiming that a class of products containing an ingredient approved as GRAS/E by the FDA are unsafe, regardless of whether they actually contain benzene, who made or distributed them, when they were manufactured, or how they were handled, Plaintiff is attempting to subvert the FDA's determination that OTC BPO drugs that conform to the Acne Monograph are GRAS/E. Plaintiff's request for relief is therefore preempted. See *McMullen v.*

*Medtronic, Inc.*, 2004 WL 2538642, at *9 (S.D. Ind. Sept. 16, 2004), *aff'd*, 421 F.3d 482 (7th Cir. 2005) (claim of continuing duty to warn preempted because it asserted the FDA-imposed warnings were inadequate and sought to impose a state-law standard of care).

The issues in this case are within the primary jurisdiction of the FDA. Primary jurisdiction permits courts to dismiss an otherwise cognizable claim when an "agency is uniquely qualified to resolve the complexities of certain areas which are outside the conventional experience of the courts." *Ryan v. Chemlawn Corp.*, 935 F.2d 129, 131 (7th Cir. 1991). The primary jurisdiction doctrine applies when: "(1) invoking the doctrine promotes consistency and uniformity, (2) the agency is uniquely qualified to resolve a complex issue that is outside the conventional experience of the courts, and (3) the application of the doctrine serves judicial economy because the dispute may be decided within the agency." *Chavez v. Church & Dwight Co., Inc.*, 17 C 1948, 2018 WL 2238191, at *7 (N.D. Ill. May 16, 2018) (citing *Ryan*, 935 F.2d at 131).

Plaintiff's allegations in this case challenge the safety of an entire category of acne drugs approved by the FDA, and the *Ryan* factors overwhelmingly favor dismissal. Whether BPO Products are safe for use under the conditions identified in the Acne Monograph is an issue within FDA's field of expertise and committed to FDA's discretion. 21 C.F.R. § 333.301 *et seq.* Given that all topical OTC BPO acne drugs make identical claims, there is a substantial danger that courts and juries could reach inconsistent rulings on whether such claims are permissible under state law. Further, Valisure has already initiated the FDA's review of the Acne Monograph under the Citizen Petition process (Compl., ¶ 35), the process expressly designed by Congress for the re-evaluation of OTC drug monographs when new information comes to light. Whether under a preemption or primary jurisdiction theory, dismissal with prejudice or a stay of the action is required.

**D. Plaintiff's Consumer Fraud Claims are Barred by the ICFA Safe Harbor Provision.**

In this case, Plaintiff does ***not*** allege the BPO Products failed to conform to the Acne Monograph. Rather, she complains that Target sold BPO Products in conformance with the Acne Monograph and that any product containing BPO—even if manufactured and labeled in conformity with the Acne Monograph—is at risk of degrading to form benzene. Plaintiff seeks to hold Target liable under ICFA for acting in conformity with the Acne Monograph.

But, under the "safe harbor" provision, ICFA "shall not apply to actions 'specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of . . . the United States.'" *O'Keefe v. Target Boots All., Inc.*, 2020 IL App (5th) 190448, ¶ 14, *as modified* (Aug. 31, 2020) (quoting 815 ILCS 505/10b(1)). When "a regulatory body acting under specific statutory authority authorizes the use of a term in labeling and advertising, a defendant may not be held liable under [ICFA] even if the term might be deemed false, deceptive, or misleading." *Id.* (citing *Price v. Philip Morris, Inc.*, 219 Ill. 2d 182, 244 (2005)).

The conduct which Plaintiff complains of, at its core, is that Target sold products containing BPO as an active ingredient which were labeled in accordance with the Acne Monograph. That is to say, Plaintiff's complaint is based on actions "specifically authorized by laws administered by any regulatory body . . . acting under statutory authority of . . . the United States"—namely the FDA. *Id.* The FDA specifically authorizes the manufacture of OTC topical acne products containing "Benzoyl peroxide, 2.5 to 10 percent." 21 C.F.R. § 333.310(a). The FDA further specifically authorizes how OTC topical acne products containing BPO may be labelled. 21 C.F.R. § 333.350. The FDA regulations warn that "[a]ny product which fails to conform to an applicable monograph after its effective date is liable to regulatory action." 21 C.F.R. § 330.10(b).

In addition to express preemption under the FDCA, as discussed above, Plaintiff's claims is barred by ICFA's safe harbor provision because Plaintiff's claim is based on actions specifically authorized by the FDA under the Acne Monograph. While applicability of the ICFA safe harbor provision is typically stated as an affirmative defense, here "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *See Novotney*, 683 F. Supp. 3d at 788 (quoting *Sidney Hillman Health Ctr.*, 782 F.3d at 928); *see also O'Keefe*, 2020 IL App (5th) 190448, ¶ 14 (granting a motion to dismiss based on ICFA's safe harbor provision based on the National Institute of Standards and Technology's definition of the term "gigabyte").

### E. Plaintiff's Claims Fail to Satisfy Rule 9(b).

Plaintiff's claims sound in fraud and must be alleged with particularity under Rule 9(b). *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) ("A claim that 'sounds in fraud' – in other words, one that is premised upon a course of fraudulent conduct – can implicate Rule 9(b)'s heightened pleading requirements."); *Vanzant*, 934 F.3d at 738 ("If the claim rests on allegations of deceptive conduct, then Rule 9(b) applies and the plaintiff must plead with particularity the circumstances of fraud."). To plead fraud with particularity, the Complaint must allege the "'who, what, when, where, and how' of the alleged conduct." *DeMaso v. Walmart, Inc.*, 655 F. Supp. 3d 696, 701 (N.D. Ill. Feb. 7, 2023). Plaintiff has not satisfied these requirements:

- **Plaintiff does not allege "when" she bought**: Plaintiff provides no particulars about her own purchases, other than the vague allegation that she purchased Target branded BPO Products "[w]ithin the past three years." (Compl., ¶ 14.) Courts have held that similarly vague timing allegations do not satisfy Rule 9(b). *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737-738 (7th Cir. 2014) (allegations that "[defendant] offered a number of sales promotions to its customers over a two-year period" were not specific enough

under Rule 9(b)) (citing *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992)).

- **Plaintiff does not allege "how" she was deceived**: Because the alleged "deception" requires the presence of benzene in Plaintiff's BPO Product, her failure to allege that her BPO Product actually contained benzene means she has not adequately alleged deception. *Barnett v. Schwan's Consumer Brands, Inc.*, 22-CV-2178-SMY, 2023 WL 6216955, at *3 (S.D. Ill. September 25, 2023) (plaintiff's claims failed the Rule 9(b) standard by "fail[ing] to adequately plead that the label is deceptive as to the amount of butter in the product.").

Because Plaintiff has not alleged particularized facts showing the "when" or "how" of any alleged fraud, all her claims should be dismissed. *See Padilla v. Costco Wholesale Corp.*, 2012 U.S. Dist. LEXIS 87222, at *10-11 (N.D. Ill., June 21, 2012) (dismissing complaint where plaintiff's fraud allegations failed to plead with sufficient particularity because plaintiff "alleges only 'numerous clinical studies' have shown that the Products are not efficacious").

F.    **Plaintiff Has No Cognizable Basis for Injunctive Relief.**

Injunctive relief is available only where Plaintiffs "face[] a real and immediate threat of future injury." *Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 833 (7th Cir. 2019) (internal citations omitted). The Seventh Circuit has dismissed requests for injunctive relief when, as here, the allegations do not show that plaintiff is likely to be harmed by the practices in the future as plaintiff is now aware of defendant's sales practices. *See Camasta*, 761 F.3d at 741 ("Since [plaintiff] is now aware of [defendant's] sales practices, he is not likely to be harmed by the practices in the future. Without more than the speculative claim that he will again be harmed by [defendant], [plaintiff] is not entitled to injunctive relief.")

Plaintiff makes no allegation she might be harmed in the future from the BPO Products. Instead, Plaintiff broadly asserts that all products containing "BPO degrade[] over time into benzene" and that she would not be willing to purchase products that contain benzene. (Compl., ¶¶ 1, 16.) Thus, it is implausible that Plaintiff, operating under this (mistaken) belief, would ever purchase the BPO Products again, foreclosing any risk of future harm. *See In re Herbal Supplements Mktg. & Sales Practices Litig.*, 2017 U.S. Dist. LEXIS 76207, at *8 (N.D. Ill. May 19, 2017) ("Plaintiffs make clear in their complaint that they would not have purchased the Affected Products had they known the truth about them."); *Rice v. Dreyer's Grand Ice Cream, Inc.*, 624 F. Supp. 3d 922, 926 (N.D. Ill. 2022) ("Because Plaintiff has not shown he is likely to be deceived again, he has no basis for injunctive relief."). And, the potential claims of absent class members "add[] nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Dreyer's Grand Ice Cream, Inc.*, 624 F. Supp. 3d at 927 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016)).

**G.      Plaintiff's Unjust Enrichment Claim Fails With Her ICFA Claim.**

An unjust enrichment claim under Illinois law requires that "defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011). But where, as here, "an unjust enrichment claim rests on the same improper conduct alleged in another claim, then . . . unjust enrichment will stand or fall with the related claim." Because Plaintiff's ICFA claims fail, so too must her unjust enrichment claim.

## V. CONCLUSION

Plaintiff's pleading defects are incurable and, for the foregoing reasons, this Court should dismiss the Complaint entirely without leave to amend.

Dated: May __, 2024

Respectfully submitted,

_/s/_ _____
Brett Doran
Brian D. Straw
Dambi Kim
**GREENBERG TRAURIG, LLP**
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Tel: (312) 456-8400
Fax: (312) 456-8435
doranb@gtlaw.com
strawb@gtlaw.com
dambi.kim@gtlaw.com

*Attorneys for Defendant Target Corporation*

## CERTIFICATE OF SERVICE

    I, Brian D. Straw, an attorney, certify that I electronically filed DEFENDANT TARGET CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties of record on this 30th day of May, 2024.

                                          */s/*_____